O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

REYNALDO HERNANDEZ,               )     Case No.: 2:12-cv-04560-CAS-JCx
                                  )
        Plaintiff,             )
                                  )
          v.                )     Hon. Christina A. Snyder
                                  )
RODOLFO AVILA SANDOVAL, LOS       )
ALTOS BOOTS, INC., DOES 1-10,     )     **FINDINGS OF FACT AND**
                                  )     **CONCLUSIONS OF LAW**
        Defendants.            )
                                  )
_____ )
                                  )
LOS ALTOS BOOTS, INC.,  a         )
California corporation, and RODOLFO )
AVILA SANDOVAL,                   )
                                  )     **Trial Date:          7/8/2014**
        Counterclaimants,      )
                                  )
         v.                )
                                  )
REYNALDO HERNANDEZ,  and          )
ROES 1-10,                        )
                                  )
        Counter-defendants.    )
                                  )
                                  )
                                  )
                                  )
_____ )

On July 8, 2014, the Court held a bench trial for the damages phase of this case. Plaintiff/counter-defendant Reynaldo Hernandez represented himself pro se. Rasheed McWilliams appeared as counsel of record for defendants/counterclaimants Los Altos Boots and Rodolfo Avila Sandoval. Pursuant to Fed. R. Civ. P. 52, the Court now issues its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. To the extent necessary, each of these findings of fact may be deemed to be a conclusion of law.

### Procedural History

2. On May 24, 2012, Reynaldo Hernandez filed a Complaint for Damages and Equitable Relief for (1) Infringement of a Federally Registered Trademark; (2) Violation of 15 U.S.C. §1125(a); and (3) California Common Law Trademark Infringement against defendants Rodolfo Avila Sandoval, Los Altos Boots, Inc., and Does 1-10. Dkt. 1.

3. On July 19, 2012, Rodolfo Avila Sandoval and Los Altos Boots filed counterclaims for (1) trademark infringement and unfair competition under 15 U.S.C. §1125(a); (2) unfair competition in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §17200, (3) common law unfair competition, and (4) cancellation of trademark registration pursuant to 15 U.S.C. §1119. Dkt. 10.

4. On January 23, 2014, counterclaimants filed a Motion for Summary Judgment as to Hernandez's claims and partial summary judgment as to their counterclaims. Dkt. 60.

5.      By order dated April 3, 2014, the Court granted summary judgment in favor of counterclaimants on Hernandez's claims.  The Court also granted partial summary judgment as to liability in favor of counterclaimants on their counterclaims.  Dkt. 94.

6.      In the same Order, the Court directed the United States Patent and Trademark Office to cancel Hernandez's  U.S. Registration No. 3,902,986 for the "Botas Michel De Trabajo" trademark pursuant to 15 U.S.C. § 1119.  Dkt. 94.

7.      This Court held counterclaimant Rodolfo Avila Sandoval to be the owner of the common law trademarks for "Original Michel M Since 1970," and "Original Michel," which include both word marks and combination word and logo marks.   Dkt. 94.

8.      The Court has found Hernandez liable for infringement of the common law trademarks for "Original Michel M Since 1970," and "Original Michel," based on his use of both the word marks and the combination word and logo marks when selling boots in the United States.  Dkt. 94.

9.      The Court has found Hernandez liable for unfair competition pursuant to Cal. Bus. & Prof. Code § 17200 based on his infringement of counterclaimants' trademarks.  Dkt. 94.

10.     The Court has found Hernandez liable for common law unfair competition based on his infringement of counterclaimants' trademarks.  Dkt. 94.

11.     On April 21, 2014, the Court issued a Permanent Injunction Order enjoining Hernandez from producing, importing, selling, or otherwise using the Michel brand.  Dkt. 93.

## History Of Original Michel Since 1970 Work Boots And Trademarks

12.     The Original Michel Since 1970 Boots Company was founded by the father of Mario Cervantes-Retamoza in Mexico in 1970.  Dkt. No. 60-1.

13.     In 1981, Mario Cervantes-Retamoza's father created and began using an "Original Michel M Since 1970" logo on boots and packaging.  Dkt. No. 60-1.

14.     Mario Cervantes-Retamoza began selling "Original Michel M Since 1970" boots in the United States in 1983.  Dkt. No. 60-1.

15.     In July 1997, Mario Cervantes-Retamoza adopted and began using the "Original Michel M Since 1970" design on boots and boot packaging. This logo maintained the essential elements of the previous "Original Michel" logo, namely the boots, the bull's head, the centered capital letter "M" and the words "Original Michel M Since 1970".  Dkt. No. 107.

16.     In March 2002, after approximately five years of use in commerce, Mario Cervantes-Retamoza applied for a United States trademark for the "Original Michel" logo. This trademark was registered on May 13, 2003 as U.S. Registration No. 2715797.  Dkt. No. 107.

17.     In 2006, Diana Zapateria, Inc. began to purchase "Original Michel" work boots from Mario Cervantes-Retamoza.  Dkt. No. 107.

18.     Hernandez sold "Original Michel" work boots imported from Cervantes-Retamoza starting in 2006 for Diana Zapateria, Inc.  Transcript, 22:6-15.

19.     Counterclaimants purchased the Original Michel Since 1970 Boots Company from Mario Cervantes-Retamoza in 2011 for $48,000.  Transcript, 45:24-46:3; 26:22-27:12.

20.     Counterclaimant Los Altos Boots, Inc. began selling "Original Michel" products in 2009.  Transcript, 45:1-8.

### Hernandez's Use of the Original Michel Brand

21.     In December 2009, the trademark registration for "Original Michel M Since 1970" was cancelled because Mario Cervantes-Retamoza failed to file the required Section 8 renewal.  Dkt. No. 60-1, ¶ 12; Transcript, 9:21-25.

22.     Hernandez had a customs agent perform a trademark search on "Original Michel" in January 2010 and found out that the federal registration had been cancelled.  Transcript, 9:18-25.

23.     Hernandez believed that the cancellation of the trademark meant that the "Original Michel" brand had been "abandoned."  Transcript, 10:3-6.

24.     In February 2010, Hernandez registered the mark "Botas Michel de Trabajo."  Moghoyan Decl. Ex. H.

25.     Hernandez believed that his registration of the "Botas Michel De Trabajo" mark meant that he owned the rights for the Michel brand of boots. Transcript, 27:9-12; 26:6.

26.     Hernandez planned with his boss, Jose Luis Solarzano, to produce and import Michel boots so that Hernandez could receive a royalty from the sales of the boots.  Transcript, 22:23-23:5.

27.     Hernandez was to receive a royalty equal to 10% of the wholesale price of the boots imported.  Transcript, 31:13-17.

28.     Hernandez provided manufacturer JAR Boots of Leon, Mexico with the specifications to produce boots bearing the "Original Michel" mark. Transcript, 28:20-29:16; Exhibit 13.

29.     Hernandez instructed JAR Boots to use the "Original Michel" tag on the boots so he would not confuse customers who were used to purchasing "Original Michel" products manufactured by Mario Cervantes-Retamoza. Transcript, 29:3-7.

30.     Hernandez instructed JAR Boots to copy Mario Cervantes-Retamoza's product packaging, including the box and the bag containing the shoes.  Transcript, 29:8-16.

31.     Hernandez did not begin importing boots until after he received the registration for the "Botas Michel De Trabajo" brand.  Transcript, 10:13-18

32.     Hernandez began importing boots bearing the "Original Michel" mark on April 18, 2012.  Transcript, 24:5-11; Exhibit 8.

33.     In 2012, Hernandez received $17,043 in royalties based on the sale of "Original Michel" boots imported from JAR Boots.  Transcript, 30:11-19; Exhibit 2; Exhibit 36.

34.     In 2013, Hernandez received $15,434.45 in royalties based on the sale of counterfeit "Original Michel" boots.  Transcript, 30:11-19; Exhibit 2.

## II.     CONCLUSIONS OF LAW

To the extent necessary, each of these conclusions of law may be deemed a finding of fact.

Counterclaimants seek (1) damages in the amount of $32,477.00, (2) trebling of damages pursuant to 15 U.S.C. § 1117(a), (3) attorneys' fees pursuant to 15 U.S.C. § 1117(a), and (4) punitive damages on its California common law counterclaim for unfair competition.  The Court considers each of the issues in turn.

## A.    Damages

The Lanham Act provides for the recover of "any damages sustained by the plaintiff."  15 U.S.C. § 1117(a). "A plaintiff must prove both the fact and the amount of damage."  Lindy Pen Co. V. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993) (citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:27, at 511 (2d ed. 1984)).  Damages are typically measured by any direct injury as well as lost profits that the plaintiff would have earned but for the infringement. Id. at 1407.  Since proof of actual damages is difficult to show, a court may award damages based on defendant's profits on an unjust enrichment theory.  Id.; see also Bandag, Inc. v. Al Bolster's Tire Stores, Inc., 750 F.2d 903, 918 (Fed. Cir. 1984).  Unlike for an accounting of profits, willful infringement is not a prerequisite when "plaintiff seeks the defendant's profits as a measure of his own damage."  Adray v. Adry–Mart, Inc., 76 F.3d 984, 988 (9th Cir. 1995).  In any case, the plaintiff is only entitled to damages resulting from the infringement, and not a windfall. Bandag, Inc., 750 F.2d at 918.  "[T]he trial court's primary function should center on making any violations of the Lanham Act unprofitable to the infringing party."  Playboy Enters. v. Baccarat Clothing Co., 692 F.2d 1272, 1274 (9th Cir. 1982).

In the absence of more direct evidence of counterclaimants' damages, the Court finds that those damages are best measured on an unjust enrichment theory. At trial, counterclaimants introduced uncontroverted evidence that Hernandez received $17,043 in royalties for the infringing boots in 2012 and $15,434.45 in royalties in 2013, for a total of $32,477.  The Court therefore concludes that Hernandez's distribution of infringing boots damaged counterclaimants in the amount of $32,477.  The Court finds that this award serves the Lanham Act's goal of making infringement "unprofitable to the infringing party."  Playboy Enters., 692 F.2d at 1274.

### B.    Enhancement of Damages

"Section 35 of the Lanham Act gives the trial judge discretion to increase the award of actual damages, not to exceed three times that amount, according to the circumstances of the case." Playboy Enter., Inc., 692 F.2d at 1275-6; 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). "Where damages have been increased, the reason usually given is that the defendant's infringement was 'knowing and willful.'" 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 30:92 (4th ed.).

The Court finds that Hernandez did not willfully infringe counterclaimants' trademark. "Willful infringement carries a connotation of deliberate intent to deceive." Lindy Pen, 982 F.2d at 1406. "Courts generally apply forceful labels such as 'deliberate,' 'false,' 'misleading,' or 'fraudulent' to conduct that meets this standard." Adobe Systems Inc. v. Kern, 2009 WL 5218005, at *8 (N.D. Cal. Nov.24, 2009) (quoting Lindy Pen Co., 982 F.2d at 1406); see also Danjaq LLC v. Sony Corp., 263 F.3d 942, 957-58 (9th Cir. 2001), abrogated on other grounds by Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), ("[W]illful" means "conduct that occurs with knowledge that the defendant's conduct constitutes . . . infringement"). "Whether infringement is 'willful' is by definition a question of the infringer's intent." Ortho Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir.1992).

Here, Hernandez produced and distributed the infringing boots in the belief that he owned the rights to the Michel brand. He believed he acquired those rights because Cervantes-Retamoza had "abandoned" the rights and he himself had registered the mark "Botas Michel de Trabajo." He did not begin importing the

infringing boots until after he had registered his mark, and he in fact initiated this action by suing counterclaimants for what he perceived as infringement of his trademark.  Of course, as explained in this Court's order on counterclaimants' motion for summary judgment, Hernandez's belief that he owned the mark was mistaken: cancellation of a registration is different from abandonment of a mark, and registering a mark does not confer ownership of that mark.  But although Hernandez was mistaken about the "intricacies in the law governing Lanham Act claims," Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002), Hernandez's belief that he owned the Michel brand was not so unreasonable as to constitute willfulness.

Accordingly, the Court concludes that Hernandez did not willfully infringe counterclaimants' trademark.  As counterclaimants have not advanced any other ground for adjusting their damages, and no such ground is evident from the record, the Court declines to modify counterclaimants' damages.

### C.   Attorneys' Fees

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).  "Exceptional cases include cases in which the infringement is malicious, fraudulent, deliberate, or willful."  Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1042 (9th Cir. 2003) (citing Gracie v. Gracie, 217 F.3d 1060, 1068 (9th Cir. 2000)); Watec Co. v. Liu, 403 F.3d 645, 656 (9th Cir. 2005) ("A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully.") (citing Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003)).

/ / /

/ / /

Here, as discussed above, the Court concludes that Hernandez did not willfully infringe counterclaimants' trademarks.  As such, the Court concludes that this is not an exceptional case, and declines to award attorneys' fees.

**D.    Punitive Damages**

Although punitive damages are not available under the Lanham Act, a plaintiff may receive punitive damages for common law unfair competition under California law.  Duncan v. Stuetzle, 76 F.3d 1480, 1490 (9th Cir. 1996).  "In assessing the appropriateness of punitive damages, we look to whether a defendant's  actions were done with malice, oppression, or fraud."  Binder v. Disability Grp., Inc., 772 F. Supp. 2d 1172, 1183-84 (C.D. Cal. 2011) (citing Cal. Civ. Code § 3294).   "Malicious, wanton or oppressive conduct may be found by wrongful conduct done willfully, intentionally and in reckless disregard of its possible injurious consequences."  Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1024 (9th Cir. 1985).

Again, the Court concludes that Hernandez did not act willfully when he infringed counterclaimants' trademark rights.  Nor have counterclaimants shown by "clear and convincing evidence" that Hernandez's infringement acted by "intentional misrepresentation, deceit, or concealment of a material fact."  Cal. Civ. Code § 3294.  Accordingly, the Court declines to award punitive damages against Hernandez.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**III.    CONCLUSION**

In accordance with the foregoing, the Court concludes that counterclaimants are entitled to an award of $32,477.00 in damages.  The Court further concludes that counterclaimants are not entitled to attorneys' fees or punitive damages.

IT IS SO ORDERED.

Dated: July 23, 2014

_____
CHRISTINA A. SNYDER
United States District Judge